1
2
3
4
5
6
7
8        **UNITED STATES DISTRICT COURT**

9        **CENTRAL DISTRICT OF CALIFORNIA**

10

11  AMERICAN AUTOMOBILE          )    CV 15-7112 RSWL (KSx)
    ASSOCIATION, INC., a         )
12  Connecticut corporation,     )
                                 )    **ORDER Re: PLAINTIFF'S**
13            Plaintiff,         )    **MOTION FOR DEFAULT**
        v.                       )    **JUDGMENT** [20]
14                               )
    H&H TOWING SERVICE, an       )
15  entity of unknown form;      )
    HASON RUBEN TORRES, an       )
16  individual; and DOES 1       )
    through 10, inclusive,       )
17                               )
              Defendants.        )
18
19  _____

20       Now before this Court is Plaintiff American

21  Automobile Association Inc.'s ("Plaintiff") Motion for

22  Default Judgment and request for entry of a permanent

23  injunction against Defendants H&H Towing Service and

    Hason Ruben Torres (collectively "Defendants") [20].
24
                    **I.    BACKGROUND**
25
    **A.   Factual Background**
26
         Plaintiff is a corporation organized and existing
27
    under the laws of Connecticut, with its principal place
28

                                 1

of business in Florida.  Compl. ¶ 4.  Defendant H&H
Towing Service is an entity with its principle place of
business in Los Angeles, California.  Id. at ¶ 5.
Defendant Hason Ruben Torres is an individual doing
business as H&H Towing Service, residing in Los Angeles,
California.  Id. at ¶ 6.

Plaintiff is the owner of the "AAA" mark (U.S.
service mark Registration No. 0,829,265) and its
correlating stylized logo (U.S. service mark
Registration No. 2,158,654) (collectively, "the AAA
Marks" or "the Marks"), used in connection with a number
of services, including providing emergency road
services.  Id. at ¶¶ 11, 12.  Plaintiff has been serving
motorists under the AAA Marks for over 100 years.  Id.
at ¶ 13.  Plaintiff, by virtue of the services offered
under the AAA Marks, is recognized as providing
emergency road services.  Id. at ¶ 15.

Defendants are in the business of providing
emergency road services and currently use the AAA Marks
in conducting and promoting their business.
Specifically, Defendants display such marks on their
advertising.  Id. at ¶ 16.  Plaintiff maintains
Defendants are not authorized to use the AAA Marks, nor
are Defendants affiliated with Plaintiff.  Id. at ¶ 17.
On September 9, 2015, Plaintiff filed its Complaint
against Defendants for injunctive relief ("Complaint"),
alleging violations of the Lanham Act [1].
/

2

**B.   Procedural Background**

Plaintiff filed this action against Defendants on September 9, 2015 [1].   The Summons and Complaint were served via substituted service on Defendants on October 24, 2015 [13, 14].   Declaration of Michael Adams ("Adams Decl.") ¶ 5, ECF No. 20-3.   On November 30, 2015, Plaintiff filed a request for the Clerk of Court to enter Default against Defendants [16, 17].   Id. at ¶ 6. On December 1, 2015, the Clerk entered default against Defendants [18].   Id. at ¶ 7.   As per the date of Plaintiff's Motion [20], Defendants had not filed any responsive pleadings or otherwise appeared in this Action.   On December 28, 2015, Plaintiff filed the present Motion for Default Judgment against Defendants [20].   Plaintiff served Defendants with this Motion and its supporting papers on December 30, 2015 by mail [21]. See Proof of Serv. [21].

**II.   ANALYSIS**

**A.   Legal Standard**

1.   Motion for Default Judgment

Default judgment is within the discretion of the district court.   Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980); see Fed. R. Civ. P. 55.   A party applying to the Court for default judgment must satisfy both procedural and substantive requirements.

Procedurally, the requirements set forth in Federal Rules of Civil Procedure Rules 55 and 56, and Local Rule 55-1 must be met.   See Vogel v. Rite Aid Corp., 992 F.

3

1  Supp. 2d 998, 1006 (C.D. Cal 2014).   Local Rule 55-1
2  provides: "When an application is made to the Court for
3  a default judgment, the application shall be accompanied
4  by a declaration in compliance with F.R.Civ.P. 55(b)(1)
5  and/or (2) and include the following: (a) When and
6  against what party the default was entered; (b) The
7  identification of the pleading to which default was
8  entered; (c) Whether the defaulting party is an infant
9  or incompetent person, and if so, whether that person is
10 represented by a general guardian, committee,
11 conservator or other representative; (d) That the
12 Service Members Civil Relief Act, 50 U.S.C. App. § 521,
13 does not apply; and (e) That notice has been served on
14 the defaulting party, if required by Federal Rule of
15 Civil Procedure 55(b)(2)."   L.R. 55-1.

16    Substantively, the Ninth Circuit has directed that
17 courts consider the following factors, referred to as
18 the Eitel factors, in deciding whether to enter default
19 judgment: "(1) the possibility of prejudice to
20 plaintiff, (2) the merits of plaintiff's substantive
21 claims, (3) the sufficiency of the complaint, (4) the
22 sum of money at stake in the action, (5) the possibility
23 of a dispute concerning the material facts, (6) whether
24 defendant's default was the product of excusable
25 neglect, and (7) the strong public policy favoring
26 decisions on the merits."   See Vogel, 992 F. Supp. 2d at
27 1005; see also Eitel v. McCool, 782 F.2d 1470, 1471-72
28 (9th Cir. 1986).

1    In analyzing these factors, the Court may base its
2  judgment entirely upon the affidavits submitted by the
3  parties.  <u>Davis v. Fendler</u>, 650 F.2d 1154, 1161 (9th
4  Cir. 1981).  If the Court determines that the defendant
5  is in default, "'the factual allegations of the
6  complaint, other than those relating to damages, are
7  taken as true.'"  <u>Televideo Sys., Inc. v. Heidenthal</u>,
8  826 F.2d 915, 917-918 (9th Cir. 1987) (quoting <u>Geddes v.</u>
9  <u>United Fin. Group</u>, 559 F.2d 557, 560 (9th Cir. 1977)).
10 Additionally, "[w]hen entry of judgment is sought
11 against a party who has failed to plead or otherwise
12 defend, a district court has an affirmative duty to look
13 into its jurisdiction over both the subject matter and
14 the parties."  <u>In re Tuli</u>, 172 F.3d 707, 712 (9th Cir.
15 1999).

16 **B.  <u>Analysis</u>**

17    Plaintiff seeks entry of default judgment against
18 Defendants for failure to respond or otherwise defend
19 themselves in this matter.  <u>See generally</u> Mot., ECF No.
20 20.  For the reasons set forth below, the Court **GRANTS**
21 Plaintiff's Motion for Default Judgment.

22    1.  <u>Jurisdiction and Service of Process are Proper</u>

23    In considering whether to enter default judgment
24 against a party for failing to plead or otherwise defend
25 himself in an action, a district court must first
26 determine whether it has jurisdiction over the subject
27 matter and the parties to the case.  <u>In re Tuli</u>, 173
28 F.3d 707, 712 (9th Cir. 1999).

1   Generally, a defect in personal jurisdiction is a
2   defense that must be asserted or waived by a party.  Id.
3   at 712 (citing Fed. R. Civ. P. 12(h)(1)).  However, when
4   a court is considering whether to enter a default
5   judgment, the court may dismiss the action *sua sponte*
6   for lack of personal jurisdiction, for a "judgment
7   entered without personal jurisdiction over the parties
8   is void."  Id.  This Court should find that service of
9   process was proper, and the Court has jurisdiction over
10  the parties and the subject matter in this action.

11          a.  *Personal Jurisdiction*

12      In states where no applicable federal statute
13  governs personal jurisdiction, that state's long-arm
14  statute applies.  See Panavision Int'l, L.P. v. Toeppen,
15  141 F.3d 1316, 1320 (9th Cir. 1998).  The exercise of
16  personal jurisdiction over a nonresident defendant
17  requires the presence of two factors: (1) California's
18  laws must provide a basis for exercising personal
19  jurisdiction, and (2) the assertion of personal
20  jurisdiction must comport with due process.  Hirsch v.
21  Blue Cross, Blue Shield of Kansas City, 800 F.2d 1474,
22  1477 (9th Cir. 1986).  California's long arm statute
23  permits the exercise of personal jurisdiction to the
24  fullest extent permitted by due process.  See Cal. Civ.
25  Proc. Code § 410.10; Panavision, 141 F.3d at 1320.
26  "Because California's long-arm jurisdictional statute is
27  coextensive with federal due process requirements, the

28                              6

1  jurisdictional analyses under state law and federal due
2  process are the same." Schwarzenegger v. Fred Martin
3  Motor Co., 374 F.3d 797, 800-01 (9th Cir. 2004). Thus,
4  only a due process analysis is required here.

5      Due process requires that a defendant have "certain
6  minimum contacts with [the forum state] such that the
7  maintenance of the suit does not offend traditional
8  notions of fair play and substantial justice." Int'l
9  Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)
10  (internal quotation marks omitted). Depending on the
11  nature and scope of the defendant's contacts with the
12  forum, jurisdiction may be general or specific to a
13  cause of action. Roth v. Garcia Marquez, 942 F.2d 617,
14  620 (9th Cir. 1991). When a defendant's contacts with
15  the forum state are "substantial" or "continuous and
16  systematic," general jurisdiction may be exercised over
17  that defendant for any cause of action, even if it is
18  unrelated to the defendant's activities with the forum
19  state. Schwarzenegger, 374 F.3d at 801-02; Data Disc,
20  Inc. v. Sys. Tech. Assocs., 557 F.2d 1280, 1287 (9th
21  Cir. 1977). A court has in personam jurisdiction over
22  an individual who resides within a particular location
23  over which the Court has jurisdiction.

24      This Court finds it has personal jurisdiction over
25  all parties. Defendant H&H Towing Service is an entity
26  with its principal place of business in Los Angeles,
27  California. Compl. ¶ 5. Defendant Torres is an

28                              7

1  individual residing in Los Angeles, California.  Id. at
2  ¶ 6.

3          b.  *Subject Matter Jurisdiction*

4       This Court finds it has jurisdiction under 28
5  U.S.C. section 1338(a) as this action arises under the
6  Lanham Act, 15 U.S.C. sections 1114, 1125(a), and
7  1125(c)(1), as well as under pendent jurisdiction under
8  28 U.S.C. section 1367.

9          c.  *Service of Process*

10      Plaintiff served the Summons and Complaint on
11 Defendants via substituted service on October 24, 2015,
12 as evidenced by the Proofs of Service on file with this
13 Court [13, 14].  Plaintiff served Defendants with the
14 Clerk's Entry of Default against Defendants on December
15 2, 2015 [19].  Plaintiff served Defendants with the
16 present Motion and its correlating declarations on
17 December 30, 2015 [21].  Accordingly, the Court finds
18 service of process was proper.

19      2.  Plaintiff has Satisfied the Procedural
20          Requirements for Default Judgment

21      Here, the Court finds Plaintiff met all procedural
22 requirements for default judgment.  First, default
23 judgment was entered by the Clerk of Court as to
24 Defendants on December 1, 2015 [18].  Second, default
25 was entered to the Complaint filed in this proceeding.
26 Third, Defendants are neither infants nor incompetent
27 persons.  See Adams Decl. ¶¶ 8, 9, ECF No. 20-3.

28                           8

Fourth, Defendants do not serve in the U.S. military, thus Defendants are not exempt under the Servicemembers Civil Relief Act.  Id.  Fifth, Defendants were served at their respective last known residences.  Id.

       3.    Plaintiff has Satisfied the Susbtantive Requirements for Default Judgment

          a.  *Risk of Prejudice to Plaintiff*

     The first Eitel factor considers the possibility of prejudice to the plaintiff if default judgment is not granted.  See Eitel, 782 F.2d at 1471.  Courts have found a plaintiff would suffer prejudice absent a default judgment if the plaintiff "would be denied the right to judicial resolution of the claims presented, and would be without other recourse for recovery." Elektra Entm't Group Inc. v. Crawford, 226 F.R.D. 388, 392 (C.D. Cal. 2005) (citing Eitel, 782 F.2d at 1471-72).

     Here, the Court finds this factor weighs in favor of entering default judgment against Defendants. Plaintiff alleges it will be prejudiced by Defendants' continued use of the AAA Marks because such use is likely to confuse consumers and cause damage to Plaintiff's business.  Mot. 3:27-4:2.  Plaintiff has been serving motorists under the AAA Marks for more than 100 years.  Compl. ¶ 13.  Plaintiff alleges Defendants' use of the AAA Marks will continue to cause a likelihood of confusion, mistake, and deception with respect to:

(a) the source and origin of the goods and services offered by Defendants; (b) the affiliation, connection, and association of Plaintiff with Defendants, and (c) Plaintiff's sponsorship, approval, and/or control of the goods and services offered by defendants, in violation of the Lanham Act. _Id._ at ¶ 23. Upon review of Plaintiff's Motion and the supporting record, this Court finds Plaintiff "will be left without a remedy if default judgment is not entered in [its] favor." _See Gucci Am., Inc. v. Huoqing_, 2011 U.S. Dist. LEXIS 783, *29 (N.D. Cal. Jan. 3, 2011). This Court finds, as Plaintiff contends, that unless restrained and enjoined by this Court, Defendants will continue to cause a likelihood of consumer confusion, mistake, and deception. This factor weighs in favor of default judgment.

　　　　b. _The merits of Plaintiff's substantive claims and sufficiency of the Complaint._

The second and third _Eitel_ factors consider the merits of the plaintiff's substantive claims and the sufficiency of the complaint. "Under an [_Eitel_] analysis, [these factors] are often analyzed together." _Tate_, 2015 U.S. Dist. LEXIS 3607 at *5 (quoting _Dr. JKL Ltd. v. HPC IT Educ. Ctr._, 749 F.Supp.2d 1038, 1048 (N.D. Cal. 2010)). "These two factors require a plaintiff to 'state a claim on which the [plaintiff] may recover.'" _Id._ (quoting _Danning v. Lavine_, 572 F.2d

1386, 1388 (9th Cir. 1978)).

> i. *Plaintiff has asserted a meritorious claim for Trademark Infringement and Unfair Competition.*

Plaintiff's first claim against Defendants alleges trademark infringement and unfair competition in violation of Sections 32 and 43(a) of the Lanham Act. Mot. 4:19-21.

To prevail on a claim for trademark infringement and unfair competition under the Lanham Act, Plaintiffs must establish that the "trade mark infringer's use of [its] mark creates a likelihood that the consuming public will be confused as to who makes the product." Jada Toys, Inc. v. Mattel, Inc., 518 F.3d 628, 632 (9th Cir. 2008).

Generally, to assess whether a defendant has infringed on a plaintiff's trademark, courts apply a "likelihood of confusion" test that asks whether use of the plaintiff's trademark by the defendant is "likely to cause confusion or to cause mistake, or to deceive as to the affiliation, connection, or association" of the two products. Mattel, Inc. v. Walking Mountain Prods., 353 F.3d 792, 806-07 (2003). The factors assessed in determining whether a defendant's use of a plaintiff's trademark results in a "likelihood of confusion" are: (1) the strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of

actual confusion; (5) marketing channels used; (6) type of goods and the degrees of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines.  <u>AMF Inc. v. Sleekcraft Boats</u>, 599 F.2d 341, 348-49 (9th Cir. 1979), <u>abrogated in part on other grounds by</u> <u>Mattel Inc. v. Walking Mountain Prods.</u>, 353 F.3d 792, 810 n. 19 (9th Cir. 2003).  While courts analyze each of the eight factors "[t]he test is a fluid one and the plaintiff need not satisfy every factor, provided that strong showings are made with respect to some of them." <u>Surfvivor Media, Inc. v. Survivor Prods.</u>, 406 F.3d 625, 631 (9th Cir. 2005).  The importance of any one factor will vary case by case, and a court may reach a conclusion of confusion by only considering a subset of the factors.  <u>Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.</u>, 174 F.3d 1036, 1054 (9th Cir. 1999).

Here, the Court finds Plaintiff makes a "strong showing" with respect to six of the eight <u>Sleekcraft</u> factors.  Regarding the first factor, Plaintiff shows the AAA Marks are strong.  Plaintiff owns numerous trademark registrations for its AAA Marks, which are employed for various goods and services, including emergency roadside service.  Compl. ¶¶ 11-15, 19-22. Plaintiff has been serving motorists under the AAA Marks for more than 100 years.  <u>Id.</u> at ¶ 13.  Plaintiff is the owner of numerous other registered trademarks

incorporating the AAA Marks in the United States and
abroad.  Id. at ¶ 14.  Plaintiff, by virtue of the
services offered under its AAA Marks, is recognized both
domestically and internationally as providing emergency
road services.  Id. at ¶ 15.

Regarding the second factor, the proximity of
services, this Court finds Plaintiff shows such
proximity exists here.  Defendants provide emergency
roadside services.  Plaintiff endorses providers of
emergency roadside services and allows providers of such
services to use or display the AAA Marks if they meet
AAA's evaluation criteria.  Compl. ¶ 22, Declaration of
James G. Brehm ("Brehm Decl") ¶ 3, ECF No. 20-10.
Defendants' use of the AAA Marks would likely cause
consumers to assume that an association exists between
Defendants' emergency roadside services and those
approved by Plaintiff.

The third Sleekcraft factor considers whether the
marks are identical.  Here, the Court finds the marks
are identical.  Plaintiff's original "AAA" mark is
comprised of the letters "AAA" superimposed on an orbit
design.  Adams Decl., ¶ 4, Exs. C, D.  Defendants'
business card contains the same exact mark on the back
side of the card along with the logos of several car
insurance companies. Declaration of Keith Levin ("Levin
Decl.") ¶¶ 2-3, Ex. A, ECF No. 20-1.  As to the fourth
factor, both parties appear to use the same marketing

13

channels to advertise their emergency roadside services.
Here, both Plaintiff and Defendants display the AAA
Marks on marketing materials, such as business cards,
for emergency roadside and towing services.  Compl. ¶¶
15-16; Brehm Decl., ¶¶ 2-3.

As to the fifth factor, given the nature of
services offered by Defendants, consumers are unlikely
to exercise a high degree of care and are likely to be
misled by Defendants' use of the AAA Marks.  This Court
finds that because both parties offer emergency roadside
services, consumers are likely to believe that a
business using the AAA Marks in connection with
emergency roadside services has met Plaintiff's
criteria, has earned Plaintiff's seal of approval, or is
otherwise associated with or endorsed by Plaintiff.
Lastly, this Court finds Defendants' unauthorized use of
the AAA Marks demonstrates improper intent.  Plaintiff
alleges Defendants were aware of Plaintiff's exclusive
rights to the AAA Marks in connection with emergency
roadside services.  Mot. 6:21-22.  This indicates
Defendants' improper intent to benefit from a falsely
implied association with Plaintiff.

This Court finds Plaintiff has made a strong
showing on six of the eight Sleekcraft factors, and
accordingly has asserted a meritorious claim for Federal
Trademark Infringement and Unfair Competition.  This
Court further finds Plaintiff is likely to succeed on

14

the merits of this claim.

ii. *Plaintiff has asserted a meritorious claim for Federal and State Trademark Dilution.*

Plaintiff brought dilution claims under both federal and California State law. Mot. 7-9. The analysis under each is the same. <u>Panavision Int'l, L.P. v. Toeppen</u>, 141 F.3d 1316, 1324 (9th Cir. 1998). In order to prove a claim for trademark dilution, a plaintiff must show that (1) the mark is famous and distinctive; (2) the defendant is making use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark is likely to cause dilution by blurring or dilution by tarnishment. <u>Jada Toys</u>, 518 F.3d at 634; 15 U.S.C. § 1125(c)(1); Cal. Bus. & Prof. Code § 14330. Neither federal law nor California state law requires a showing of competition or likelihood of confusion to succeed on a dilution claim. <u>Nissan Motor Co. v. Nissan Computer Corp.</u>, 378 F.3d 1002, 1011 (9th Cir. 2004) (citing 15 U.S.C. § 1127); Cal. Bus. & Prof. Code § 14330.

First, Plaintiff argues that the AAA Marks are famous and distinctive. Under 15 U.S.C. § 1125(c)(2)(A), a mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner. 15 U.S.C. § 1125

(c)(2)(A).   Factors that demonstrate a mark's fame are:
(1) the duration, extent, and geographic reach of
advertising and publicity of the mark, whether
advertised or publicized by the owner or third parties;
(2) the amount, volume, and geographic extent of sales
of goods or services offered under the mark; (3) the
extent of actual recognition of the mark; and (4)
whether the mark was registered under the Act of March
3, 1881, or the Act of February 20, 1905, or on the
principal register.   15 U.S.C. § 1125(c)(2)(A).

As to the first factor, Plaintiff has used its
original "AAA" mark and correlating logo in commerce
since 1916 and 1997, respectively.   Brehm Decl. ¶ 2.
Plaintiff spends millions of dollars each year to
promote the AAA Marks throughout the United States.   <u>Id.</u>
Plaintiff argues that as a result of this advertising,
Plaintiff's trademarks, including the "AAA" mark, have
acquired a high degree of distinctiveness and widespread
recognition as symbols of the products and services that
Plaintiff and its affiliate organizations provide.   <u>Id.</u>
This factor weighs in favor of finding the Marks famous
and distinctive.   As to the second factor, Plaintiff
provides a variety of services, including but not
limited to emergency road services.   Compl. ¶ 11.
Plaintiff serves customers all throughout the United
States, including California.   <u>See</u> Brehm Decl. ¶ 2, ECF
No. 20-10.   This factor weighs in favor of finding the

Marks famous and distinctive.

As to the third factor, Plaintiff argues that a significant segment of the population associates the AAA Marks with Plaintiff. Id. Plaintiff asserts that the public see the AAA Marks as a symbol that distinguishes products, services, and organizations that are affiliated with or endorsed by Plaintiff from those that are not. Id. This Court finds that as a result of the long period of use and extensive advertisement and sale of services under the AAA Marks, motorists and members of the general consumer population in the United States likely recognize the AAA Marks as identifying emergency road services provided by or endorsed by Plaintiff. This factor weighs in favor of finding the Marks famous and distinctive.

As to the fourth factor, Plaintiff argues that Plaintiff's registered Marks are valid, subsisting, and remain in full force and effect as evidence of the validity of Plaintiff's ownership of the Marks in connection with the services specified in the registration. Id. at ¶ 21. Plaintiff shows the registration mark for the AAA Marks is incontestible under section 15 of the Lanham Act, and constitutes conclusive evidence of Plaintiff's exclusive right to use the mark in connection with emergency road services. Id. at ¶ 20. This factor weighs in favor of finding the Marks famous and distinctive. Upon review of the

record, the Court finds Plaintiff has successfully shown that the Marks are famous and distinctive.

Second, Plaintiff shows Defendants are making use of the AAA Marks in commerce because Defendants display the mark on their business cards for providing emergency roadside services.   Third, Plaintiff shows that the AAA Marks became famous before Defendant began using the Marks in connection with emergency roadside services. Compl. ¶ 20; Brehm Decl., ¶¶ 2-3, ECF No. 20-10. Lastly, Plaintiff shows that Defendants' use of the Marks in their business has lessened the capacity of the Marks to identify and distinguish Plaintiff's services, thereby making Defendants' use of the AAA mark dilutive. Id. at 23-24.   This Court finds that Defendants have created a false association between themselves and Plaintiff.   This Court thus funds Plaintiff's federal and state trademark dilution claims are sufficiently pled in the Complaint, and Plaintiff is likely to succeed on the merits of these claims.

iii.    *Plaintiff has asserted a meritorious claim for Common Law Trademark Infringement.*

To prevail on its common law trademark infringement claim, Plaintiff must show that (1) it has a valid, protectable trademark, and (2) Defendant's use of the mark is likely to cause confusion.   Applied Info. Scis. Corp. v. eBAY, Inc., 511 F.3d 966, 969 (9th Cir. 2007).

There are three ways in which Plaintiff can establish it has a protectable interest: (1) it has a federally registered trademark in goods or services; (2) its mark is descriptive but has acquired a secondary meaning in the market; or (3) it has a suggestive mark, which is inherently distinctive and protectable. <u>Id.</u> at 970. Registration of a mark "on the Principal Register in the Patent and Trademark Office constitutes prima facie evidence of the validity of the registered mark and of [the registrant's] exclusive right to use the mark on the goods and services specified in the registration." <u>Brookfield Commc'ns, Inc.</u>, 174 F.3d at 1047.

Here, Plaintiff has registered the AAA Marks with the United States Patent and Trademark Office. <u>See</u> Compl. Exs. A, B. Thus, Plaintiff has made a prima facie showing that it holds a valid, protectable interest in the use of the AAA Marks in connection with emergency roadside services. Further, as discussed above, Plaintiff has demonstrated that Defendants used the AAA Marks without consent and that such use is likely to cause confusion. As this Court finds Plaintiff has sufficiently alleged its claims in its Complaint, and Plaintiff's claims are likely to succeed on the merits, the second and third <u>Eitel</u> factors weigh in favor of default judgment.

        c.   *The sum of money at stake in the action and injunctive relief.*

The fourth <u>Eitel</u> factor deals with the money at stake in the action.  Here, Plaintiff has abandoned its claim for damages and instead seeks a permanent injunction against Defendants.  Mot. 4:5-6.  Plaintiff seeks a permanent injunction preventing Defendants from using the AAA Marks, or any other marks or designs "confusingly similar" to the AAA Marks.  <u>Id.</u> at 9:25-26. Plaintiff also requests that Defendants be required to remove and turn over the infringing materials.

"Injunctive relief is the remedy of choice for trademark infringement and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." <u>Century 21 Real Estate Corp. v. Sandlin</u>, 846 F.2d 1175, 1180 (9th Cir. 1988).  Under the Lanham Act, courts have the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c) or (d) of section 1125 of this title."  15 U.S.C. § 1116(a).  Additionally, when a defendant's violation of 15 U.S.C. 1125(a) (false designation of origin) or a willful violation under section 1125(c) (trademark dilution) is established, the Court has the power to order that "all labels, signs, prints, packages, wrappers, receptacles, and

20

1  advertisements bearing the infringement mark and in the
2  possession of the defendant" be delivered and destroyed.
3  15 U.S.C. § 1118.  Under section 1118, the Court also
4  has the power to order that "the word, term, name,
5  symbol, devise, combination thereof, designation,
6  description, or representation that is the subject of
7  the violation, or any reproduction, counterfeit, copy,
8  or colorable imitation thereof . . . shall be delivered
9  up and destroyed."  Id.

10      As Plaintiff has established that Defendants' use
11  of the AAA Marks is likely to cause confusion, this
12  Court enters the permanent injunction as requested by
13  Plaintiff.  Without entry of a permanent injunction,
14  Plaintiff would be exposed to the risk of continuing
15  irreparable harm.

16          d.  *The possibility of a dispute concerning the*
17              *material facts.*

18      This Court finds it is not clear there would be any
19  genuine dispute of material facts in the present case,
20  as Defendants have not answered or otherwise appeared in
21  this action.  "Upon entry of default, the well-pleaded
22  allegations in the complaint are taken as true, except
23  those relating to damages."  Tate, 2015 U.S. Dist. LEXIS
24  3607 at *12 (citing TeleVideo Sys., Inc. v. Heidenthal,
25  826 F.2d 915, 917-918 (9th Cir. 1987)).  "In addition,
26  '[t]he district court is not required to make detailed
27  findings of fact.'"  Id. (citing Fair Housing of Marin

28                          21

v. Combs, 285 F.3d 899, 908 (9th Cir. 2002)).  In Tate,
the district court found: "Since defendant never
answered or otherwise appeared in this action, it is
unclear whether there would be any genuine dispute of
material facts."  Id.  As in Tate, this Court finds no
impediment to entry of default judgment against
Defendants.

> e.   Whether Defendants' default was the product
>      of excusable neglect.

"Excusable neglect is an equitable concept that
takes account of factors such as 'prejudice . . ., the
length of the delay and its potential impact on judicial
proceedings, the reason for the delay, including whether
it was within the reasonable control of the movant, and
whether the movant acted in good faith.'"  Tate, 2015
U.S. Dist. LEXIS 3607 at *12 (quoting Pioneer Inv.
Servs. Co. v. Brunswick Assocs. Ltd. Partnership, 507
U.S. 380, 395 (1993)).  As Defendants have not responded
or otherwise appeared in this action, there is no
evidence before this Court that Defendants' default is
the product of excusable neglect.  Such failure to
appear favors default judgment.

> f.   The strong public policy favoring decisions
>      on the merits.

Although there is a strong policy underlying the
Federal Rules of Civil Procedure, which favors decisions
on the merits "whenever reasonably possible," Tate, 2015

U.S. Dist. LEXIS 3607 at *13 (quoting <u>Eitel</u>, 782 F.2d at 1427), "'this preference, standing alone, is not dispositive.'" <u>Id.</u> (quoting <u>Kloepping v. Fireman's Fund</u>, 1996 U.S. Dist. LEXIS 1786 (N.D. Cal. 1996)).  In deciding to grant default judgment, the <u>Tate</u> court noted: "Defendant's failure to answer the Complaint makes a decision on the merits impractical, if not impossible." <u>Id.</u> (citing <u>PepsiCo, Inc. v. California Sec. Cans</u>, 238 F.Supp.2d 1172, 1177 (C.D. Cal. 2002)). "Under Fed. R. Civ. P. 55(b), termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action." <u>Id.</u>

In the present case, Defendants have similarly made it impractical to decide the matter on the merits.  In fact, no adjudication of the substantive claims can occur because Defendants have not answered Plaintiff's Complaint.  Because all <u>Eitel</u> factors weigh in favor of default judgment, this Court **GRANTS** Plaintiff's Motion for Default Judgment [20] against Defendants.

### III.   CONCLUSION

This Court **GRANTS** Plaintiff's Motion for Default Judgment.  **GOOD CAUSE APPEARING**, this Court further **GRANTS** Plaintiff's request for entry of a permanent injunction against Defendants.


DATED: April 11, 2016          s/ RONALD S.W. LEW
                               **Honorable Ronald S.W. Lew**
                               Senior U.S. District Judge

23